OPINION OF THE COURT
CREAN, Senior Judge:
The appellant was found guilty, on mixed pleas, by a general court-martial composed of officer members, of use of cocaine, three specifications of larceny of currency, unlawful *599 entry, and uttering worthless checks (20 specifications totaling $2,044.45), in violation of Articles 112a, 121, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a, 921, and 934 (1988) [hereinafter UCMJ]. The appellant’s “announced” sentence was a dishonorable discharge, confinement for eight years, forfeiture of $350.00 pay for ninety-six months, and reduction to Private El. The convening authority approved a dishonorable discharge, confinement for six years, forfeiture of $350.00 pay per month for seventy-two months, and reduction to Private El.[1]
The appellant asserts, inter alia, that the military judge erred in admitting into evidence a statement the appellant made to law enforcement personnel; that the military judge erred because he did not give a limiting instruction on the use of uncharged misconduct in determining the sentence; and that the convening authority increased the forfeiture portion of the sentence. We disagree on all assertions of error except for that pertaining to the convening authority increasing the forfeiture. We affirm the findings of guilty but affirm only part of the forfeiture portion of the sentence.
On 13 January 1992, the appellant went to Cutler Army Hospital at Fort Devens, Massachusetts, to renew a prescription for medication that he had lost. He discussed his needs with licensed practical nurse (Nurse) Williams, who had previously prescribed the medication for the appellant. Nurse Williams wrote a new prescription for the appellant and had it approved by a doctor. Nurse Williams and the appellant left the examining room together but went in opposite directions. A few minutes later, Nurse Williams heard a scream, turned and saw a doctor standing in the doorway of her office. The appellant then exited the office, pushed the doctor and ran out of the hospital. The doctor discovered approximately $100.00 missing from her purse that had been in the office.
The military police were immediately notified of the theft and given a description of the perpetrator. Military police patrols were told to be on the lookout for the thief. A few minutes later, military policeman (MP) Burger spotted the appellant making a call from a phone booth located approximately a quarter mile from the hospital. Since the appellant matched the description of the thief, MP Burger approached the appellant. As MP Burger approached, the appellant waved to him. MP Burger apprehended the appellant. The appellant told MP Burger he needed help because he was coming down off a cocaine induced high. MP Burger told him to be quiet until he was taken to the military police station and read his rights.
At the military police station, the appellant was placed in an interrogation room while MP Burger informed the on-duty military police investigator (MPI), Sergeant Chazen, of the apprehension. MP Burger told MPI Chazen that the appellant may be under the influence of drugs. MPI Chazen observed the appellant through the one-way mirror in the interrogation room. MPI Chazen had been an emergency medical technician before entering the Army and had extensive training in the detection and treatment of individuals under the influence of cocaine. MP Burger had little or no training in this area. MPI Chazen called her legal advisor who advised her to ensure that the appellant understood his rights and was not under the influence of any drugs before questioning him.
MPI Chazen interviewed the appellant, with MP Burger present, advising the appellant of his rights using the standard rights warning form. She advised him that he was suspected of burglary, larceny, and damage to government property, and asked the appellant if he received legal advice from an attorney in the last 30 days. The appellant responded that he had seen an attorney for another offense involving drugs but not for any of the offenses mentioned by MPI Chazen. The appellant had, in fact, recently received Article 15, UCMJ, punishment for drug use and had been advised by a lawyer.
MPI Chazen again contacted her legal adviser who informed her that if the appellant *600 had not been counseled by a lawyer for the offenses she was investigating, she could continue to question the appellant without informing the appellant’s lawyer. The appellant filled in the blanks at the top of the Department of Army Form 3881, corrected his social security number, and initialed the form where required. The appellant at first informed MPI Chazen that he wished to invoke his rights to remain silent. She told the appellant that she could not help him if he invoked his rights and remained silent. The appellant then said that he wanted help and would talk to her. MPI Chazen and MP Burger both testified that the appellant appeared to understand all that he was told and was logical and cooperative in answering questions.
MPI Chazen had a number of unsolved case files on crimes committed on Fort Devens. In some of these cases, the appellant, along with other soldiers, was considered a potential suspect. She asked the appellant about these crimes and the appellant admitted to committing them. One of these crimes involved the theft of money from another purse at the hospital on 8 January 1992. Another crime was the unlawful entry and larceny of currency from the cash box of the dining facility at Cutler Army Hospital. During this entire period of interrogation, the appellant did not appear to be under the influence of any drugs.
During the questioning, the appellant told MPI Chazen that he needed help for drug addiction. MPI Chazen told the appellant that she would call his company commander and suggest he needed help. She also told the appellant that she would call some people she knew who worked in the Alcohol and Drug Abuse office and ask for assistance for the appellant.
The appellant was picked up from the military police station by Sergeant Livingston from his unit. The appellant told Sergeant Livingston that he wanted .to volunteer to take a urinalysis test for drug detection. When he was brought before the commander, Captain Napora, the appellant renewed his request for drug testing. Captain Napora arranged for an immediate drug test. The appellant was tested and the results were positive for cocaine.
The military judge, in extensive findings of fact, ruled that the appellant had been properly advised of his rights by MPI Chazen and that he was not under the influence of any drugs when he elected to make a statement. He also determined that MPI Chazen did not make any promises to the appellant as an unlawful inducement to have him make a statement. He determined that the statement appellant made to MPI Chazen was voluntary and admissible. He also determined that the request to take a urinalysis test originated with the appellant and was clearly voluntary.
In his sworn testimony at the sentencing portion of the trial, the appellant, in response to a question from his individual defense counsel, indicated that he sold drugs for profit to finance his drug habit. In a sidebar conference, the appellant’s counsel informed the military judge that he wanted the “jury to totally disregard evidence of that.” The trial counsel informed the judge that she would not pursue that line of questioning. The appellant’s counsel then stated that the solution was satisfactory with him. The trial counsel did not question the appellant about this matter. At the conclusion of the appellant’s testimony, a court member wanted to ask a question to clarify the distribution issue. The military judge determined that the question was inappropriate and did not allow it. The appellant’s counsel then renewed his request for a specific curative instruction on the uncharged misconduct. The military judge refused because he did not want to highlight the issue for the court members. The trial counsel in her argument told the court members that the appellant should only be sentenced for the offenses for which he had been found guilty. The military judge similarly instructed the court members.
I. VOLUNTARINESS OF STATEMENT
The determination of the voluntariness of a statement under the due process clause of the Fifth Amendment is a matter of law. Arizona v. Fulminante, 499 U.S. 279, 286, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302 (1991); Miller v. Fenton, 474 U.S. 104, 110, *601 106 S.Ct. 445, 449 — 150, 88 L.Ed.2d 405 (1985); United States v. Poduszczak, 20 M.J. 627, 631 (A.C.M.R.1985). A confession is the most probative and damaging evidence against a person. Bruton v. United States, 391 U.S. 123, 139, 88 S.Ct. 1620, 1629-1630, 20 L.Ed.2d 476 (1968). The test for voluntariness of a confession is that the confession is a free and unconstrained choice of the maker. Culombe v. Connecticut, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). The totality of the circumstances will determine' if a confession is voluntary. Schneckloth v. Bustamante, 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854 (1973). We must determine the facts surrounding the taking of the statement, and then the psychological factors affecting the appellant when he was making the statement, and apply these facts to the rule of law concerning voluntariness. Culombe v. Connecticut, 367 U.S. at 603, 81 S.Ct. at 1879.
The appellant asserts that his statement to MPI Chazen was not voluntary because MPI Chazen knew he was represented by counsel and she failed to notify the counsel that the appellant was being questioned; that the appellant was so affected by cocaine that he had taken that he did not understand what he was doing; and that MPI Chazen promised drug rehabilitative treatment to the appellant if he made a statement. However, our review of the evidence and the findings of the military judge leads us to conclude that the statement was voluntary.
The evidence clearly shows that the appellant was represented by counsel for an offense entirely different from the ones which MPI Chazen was questioning him. The evidence also shows that shortly before the appellant made his statement to MPI Chazen, he discussed his medication with Nurse Williams. Nurse Williams testified that she has experience in detecting individuals under the influence of drugs and the appellant did not appear to be under the influence of drugs. MPI Chazen also had extensive experience in detecting individuals under the influence of drugs and testified that the appellant did not appear to be under the influence of drugs. Captain Napora and Sergeant Livingston saw the appellant shortly after he made his statement and both testified that he did not appear to be under the influence of drugs. The appellant’s actions in completing the rights warning form, correcting his social security number, and reading all of the documents presented to him indicate that he was not influenced by drugs at the time he gave his statement to MPI Chazen. Also, from the testimony of MPI Chazen and MP Burger, we find that MPI Chazen did not promise the appellant that she would get drug treatment for him if he gave a statement. She did tell the appellant that she would inform the appellant’s company commander that he needed help for his drug problem. Accordingly, we hold, under the totality of the circumstances, that the appellant’s statement to MPI Chazen was voluntary and that the military judge did not err in admitting the statement into evidence.
II. UNCHARGED MISCONDUCT INSTRUCTION
After the appellant inadvertently testified that he distributed drugs for profit to finance his own drug habit, the military judge determined that a specific curative instruction would be harmful. The military judge gave the general instruction that the appellant must be sentenced only for the offenses of which he was found guilty. The appellant asserts that the military judge abused his discretion in not giving the requested specific curative instruction.
The issue is not the admissibility of the uncharged misconduct, since the evidence was raised by the appellant himself. See Military Rule-of Evidence 403(b). The issue is whether the military judge abused his discretion in giving a general instruction on sentencing instead of the requested specific curative instruction. The military judge shall give the members appropriate instructions on sentencing. Rule for Courts-Martial 1005 [hereinafter R.C.M.]. However, he is not required to give the specific requested instruction if the matter is adequately covered in the instructions. R.C.M. 1005 discussion. In this ease, the trial counsel in her sentencing argument specifically noted that the appellant was to be sentenced for only the offenses for which he was found guilty. *602 The military judge adequately instructed the court members not to consider the distribution for profit evidence in determining an appropriate sentence, and only to sentence the appellant for the offenses of which he was found guilty. We hold that the military judge did not abuse his discretion by refusing to give a specific curative instruction.
III. INCREASED PUNISHMENT
In announcing the sentence of the court, the president of the court- stated in respect to forfeitures that the appellant was sentenced to forfeit “$350.00 pay for a period of 96 months.” The sentence worksheet lists the sentence as $350.00 pay per month for 96 months. After the court members were dismissed, the military judge questioned the appellant and his counsel on the effect of the pretrial agreement on the announced sentence. It is clear from that discussion that all parties considered the forfeiture portion of the sentence to be a forfeiture of $350.00 pay per month for 96 months. The post-trial recommendation of the staff judge advocate advises the convening authority that the adjudged sentence was forfeiture of $350.00 pay per month for 96 months. The trial defense counsel in commenting on the recommendation did not note any error by the staff judge advocate.
It is clear that the president of the court misspoke in announcing the sentence of the court by omitting from the announced sentence the words “per month”. An announced sentence that does not include the words “pay per month” means that the amount announced is the total amount to be forfeited. United States v. Johnson, 13 U.S.C.M.A. 127, 32 C.M.R. 127, 1962 WL 4462 (1962); United States v. Smith, 43 C.M.R. 660, 1971 WL 12849 (A.C.M.R.1971). A sentence that is incorrectly announced can be corrected by following the procedures of R.C.M. 1007(b). The correction procedures of R.C.M. 1007(b) were not followed in this case and the convening authority approved a forfeiture greater than that announced by the court. We will correct the error by affirming a sentence which includes forfeitures no greater than that announced by the court and which could properly have been approved by the convening authority without the corrective procedures of R.C.M. 1007(b). United States v. Henderson, 21 M.J. 853 (A.C.M.R.1986).
We have carefully considered the other issues raised by appellant through counsel and find them without merit. The appellant has submitted voluminous material to this court pursuant to United States v. Grostefon, 12 M.J. 431 (C.M.A.1982), asserting numerous errors, to include ineffectiveness of counsel. We have carefully considered all of this material. As to the ineffectiveness of counsel issue, we find that the appellant has not presented sufficient evidence to overcome the strong presumption of counsel’s effective performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); United States v. Scott, 24 M.J. 186 (C.M.A.1987); United States v. Lewis, 38 M.J. 501 (A.C.M.R.1993); United States v. Crum, 38 M.J. 663 (A.C.M.R.1993).
The findings of guilty are affirmed. Only so much of the sentence as provides for a dishonorable discharge, confinement for six years, reduction to Private El, and forfeiture of $350.00 pay is affirmed.
Judge MORGAN and Judge GONZALES concur.

. Argument was heard in this case at the United States Military Academy, West Point, New York, on the evening of 27 October 1993.