UNITED STATES, Appellee

v.

Michael A. BRIGGS, Private
U.S. Army, Appellant.

No. 94–0655.
CMR No. 9201428.

U.S. Court of Appeals for
the Armed Forces.

Argued March 9, 1995.

Decided Sept. 13, 1995.

For Appellant: *Captain Blair M. Jacobs* (argued); *Colonel Stephen D. Smith, Lieutenant Colonel John T. Rucker, Captain Roy H. Hewitt* (on brief); *Lieutenant Colonel James H. Weise* and *Major Robin L. Hall.*

For Appellee: *Major Lyle D. Jentzer* (argued); *Colonel John M. Smith* and *Lieutenant Colonel James L. Pohl* (on brief); *Captain John W. O'Brien.*

*Opinion of the Court*

GIERKE, Judge:

1. A general court-martial composed of officer members convicted appellant, in accordance with his pleas, of wrongful use of cocaine, larceny (2 specifications), and uttering worthless checks (20 specifications), in violation of Articles 112a, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 912a, 921, and 934, respectively. Contrary to his pleas, he was convicted of larceny (2 other specifications) and unlawful entry, in violation of Articles 121 and 134. He was acquitted of damaging government property, assaulting another soldier by grabbing him around the neck with his hands, and another unlawful entry, in violation of Articles 108, 128, and 134, UCMJ, 10 USC §§ 908, 928, and 934, respectively. The approved sentence provides for a dishonorable discharge, confinement for 6 years, forfeiture of $350.00 pay per month for 72 months, and reduction to the lowest enlisted grade. The Court of Military Review * affirmed the findings and sentence, except for a substantial reduction of the forfeitures. 39 MJ 600, 604 (1994).

2. We granted review of the following issues:

I

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO GIVE A SPECIFICALLY TAILORED CURATIVE INSTRUCTION ABOUT UNCHARGED MISCONDUCT DURING SENTENCING INSTRUCTIONS, DESPITE A DEFENSE REQUEST TO DO SO, WHEN THE DEFENSE–REQUESTED IN-

---

* *See* 41 MJ 213, 229 n. * (1994).

STRUCTION WAS CORRECT IN LAW AND IN FACT.

## II

WHETHER PRIVATE BRIGGS WAS DENIED HIS RIGHT TO A FAIR TRIAL AND THE PRESUMPTION OF INNOCENCE BECAUSE DURING BREAKS IN THE TRIAL, HE WAS FORCED TO WEAR BODYCUFFS AND LEG IRONS IN THE PRESENCE OF THE COURT-MARTIAL MEMBERS.

## III

WHETHER THE ARMY COURT OF MILITARY REVIEW ERRED BY REFUSING TO ADJUDICATE PVT BRIGGS' CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL WHERE THAT CLAIM WAS ESTABLISHED BY AFFIDAVITS, ARMY MEDICAL RECORDS, VETERANS ADMINISTRATION MEDICAL RECORDS, MEDICAL TREATISES, AND STATEMENTS BY WITNESSES, AND BY ADOPTING AN UNATTAINABLE STANDARD FOR APPELLANT'S ASSERTION OF A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

After considering the record of trial as well as the briefs and arguments of counsel, we conclude that the court below correctly resolved the issues against appellant.

### Uncharged Misconduct

3. Appellant testified under oath at his sentencing hearing. He described his background and military service, his financial problems, and the break-up of his marriage while he was deployed in Operation Desert Storm. After a period of depression and unsuccessful mental health treatment, he began drinking heavily and using cocaine. He spent $500.00 his mother had sent him and all his savings. He used the proceeds from the bad checks, his military pay, and the larcenies to buy cocaine. Defense counsel asked appellant how he had obtained money for drugs, and appellant responded that he had obtained "larger sums of cocaine ...

[a]nd split it up; gave it to somebody ... they just brought my money back."

4. After appellant testified, defense counsel told the military judge that he "had no idea" that appellant would testify about distributing drugs, and he requested that the military judge instruct the members "to totally disregard" appellant's testimony about distribution. The military judge responded, "Pretty hard to tell them to disregard what they've already heard, especially when it's properly in there." Trial counsel announced, "I'm not going to touch that. I'm not going to argue that; I'm not going to chase this. There is enough of a case to make without any other issues." The military judge then asked defense counsel, "Is that satisfactory?" Defense counsel responded, "Yes, sir."

5. When trial counsel had finished cross-examining appellant, a court member submitted a written question to the military judge, asking how long appellant distributed drugs to support his habit. The military judge did not permit the question. Defense counsel repeated his request for a specific instruction to disregard the testimony about distribution. Trial counsel argued that such an instruction "will only remind them of it even more." The military judge told counsel that he would instruct the members to sentence appellant only for the crimes of which he was convicted, but he declined to give the specific instruction requested by defense counsel. He told counsel, "I'm not going to specifically highlight that they shouldn't consider this drug distribution offense information, because it's just going to make matters worse." The military judge's sentencing instructions included the following admonition: "[A]lthough you must give due consideration to all matters in extenuation, mitigation, and aggravation, keep in mind that the accused is to be only sentenced for the crimes that he's been found guilty of committing."

6. Appellant now argues that the military judge erred by refusing to instruct as requested by defense counsel. We hold that the military judge did not abuse his discretion. A "military judge is not required to give" a specifically requested instruction "if the matter is adequately covered" in other

instructions. RCM 1005(c), Discussion, Manual for Courts–Martial, United States, 1984. In this case the military judge's limiting admonition was sufficient. *See United States v. White,* 36 MJ 306, 309 (CMA 1993); *United States v. Mullens,* 29 MJ 398, 400 (CMA 1990).

### Use of Restraints During Trial

7. In a post-trial affidavit submitted to the court below almost one year after trial, appellant asserted that he was improperly restrained during the trial:

> During my trial on 22 and 23 June 1992, I was transported to and from court shackled in handcuffs and leg irons. Every time the court recessed, I again had to put on the handcuffs and leg irons. When the members sitting on the panel saw me in the hallways with shackles, I just know that they already thought I was guilty. . . .

> \*　　\*　　\*

> During every recess, I was put in shackles and leg irons. My defense counsels should have objected to this treatment. The court members saw me and probably believed I was guilty—I certainly looked it.

■ 8. Because the issue was not raised by counsel, the military judge, or a court member, we are confronted with a silent record. To decide this issue, we will accept as fact that appellant may have been seen by court members in the hallways while wearing restraints. Appellant does not assert that he was restrained in open court, that the military judge ordered that appellant be restrained or approved it, or that the military judge was aware that appellant may have been observed by court members in restraints.

9. "As a general proposition, an accused is entitled to appear at his trial free from physical restraint." *United States v. Gentile,* 1 MJ 69, 70 (CMA 1975), *citing Way v. United States,* 285 F.2d 253 (10th Cir.1960); *State v. Roberts,* 86 N.J.Super. 159, 206 A.2d 200 (1965). That entitlement is, however, not absolute. Where a military judge is "confronted with" an accused who is "disruptive, contumacious, [or] stubbornly defiant," restraint or even removal from the courtroom may be permissible. *United States v. Gentile,* 1 MJ at 70, *quoting Illinois v. Allen,* 397 U.S. 337, 343, 90 S.Ct. 1057, 1061, 25 L.Ed.2d 353 (1970).

■ 10. Because this issue was not raised at trial by timely objection, it is waived unless it is plain error. *See* RCM 905(e) (failure to raise "requests, defenses, or objections" before adjournment constitutes waiver). This Court has said, "Plain error requires, at the very least, that there be an error; it is plain; and it affects a substantial right of the accused, *i.e.,* it was prejudicial." *United States v. Prevatte,* 40 MJ 396, 397 (CMA 1994). *See United States v. Olano,* — U.S. —, —, 113 S.Ct. 1770, 1779, 123 L.Ed.2d 508 (1993). *See generally* S. Childress & M. Davis, 2 *Federal Standards of Review* § 7.04 at 7–22 (2d ed. 1992).

■ 11. Appellant's case differs significantly from the cases cited in his brief and argument. *See Illinois v. Allen, supra* (judge ordered that defendant be removed from court room); *Marquez v. Collins,* 11 F.3d 1241, 1243 (5th Cir.) (judge ordered that defendant be handcuffed and shackled during trial because of his dangerousness), *cert. denied,* — U.S. —, 115 S.Ct. 215, 130 L.Ed.2d 143 (1994); *Zygadlo v. Wainwright,* 720 F.2d 1221, 1223 (11th Cir.1983) (judge ordered defendant shackled because of previous escape attempt), *cert. denied,* 466 U.S. 941, 104 S.Ct. 1921, 80 L.Ed.2d 468 (1984). Those cases involved restraint imposed by the judge. There is no evidence in appellant's case that the judge approved or knew about the use of restraints. Those cases also involved restraints worn by the defendant in open court. Appellant complains only about being restrained in the hallways during recesses. Finally, in the cited cases the defendants were convicted as charged, contrary to their pleas, but appellant was acquitted of the one contested specification alleging an assault.

12. Restraining an accused can send a signal that even the judge considers the accused "dangerous." *See Marquez v. Collins,* 11 F.3d at 1243. In this case, however, any signal that the accused was dangerous was

not received by the court members. They acquitted him of the only crime of violence alleged: assault by grabbing another soldier around the neck with his hands (Additional Charge I and its specification).

■ 13. Likewise, there was no prejudice on sentencing. The court members were properly informed that appellant was in pretrial confinement. *See* RCM 1001(b)(1) (trial counsel shall inform court-martial of "duration and nature of any pretrial restraint"). We expect that court members possessing the experience required by Article 25(d)(2), UCMJ, 10 USC § 825(d)(2), would know that "an accused does not enjoy unfettered freedom" when ordered into pretrial confinement. *See Marquez v. Collins,* 11 F.3d at 1243. Accordingly, we hold that there was no plain error arising from the possibility that court members may have seen appellant wearing the indicia of pretrial confinement, *i.e.,* handcuffs and shackles.

### Ineffective Assistance of Counsel

14. Appellant makes three complaints: (1) that the court below "refused" to adjudicate his claim of ineffective assistance of counsel; (2) that the court below adopted an "unattainable standard" for adjudicating his claim; and (3) that his claim was established. Final Brief at 11–18.

15. Appellant's first claim misstates the record. The court below specifically addressed appellant's assertion that his counsel were ineffective and rejected it. 39 MJ at 604. To the extent that appellant argues that he was entitled to a more detailed analysis of his claim, we reject his argument. *United States v. Straight,* 42 MJ 244, 248 n. 4. (1995).

16. In *United States v. Boone,* 42 MJ 308 ¶ 29 (1995), we rejected the argument that the Army Court of Military Review had adopted an "unattainable standard" for adjudicating claims of ineffective assistance of counsel. We reject that same argument in this case as well.

■ 17. Turning to the merits of appellant's claim, we hold that appellant is not entitled to relief. To establish ineffective

assistance of counsel, an appellant must show (1) that his "counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *United States v. Boone, supra.*

18. Appellant advances eighteen reasons for asserting that his counsel were deficient. Final Brief at 16. We agree with the court below (*see* 39 MJ at 604) that appellant is not entitled to relief, but we believe that the following four of appellant's allegations warrant comment: (1) failure to investigate evidence of drug abuse negating specific intent—Final Brief at 17; (2) failure to challenge appellant's competence to stand trial—Final Brief at 18; (3) failure to object or request corrective action after appellant was observed by court members in handcuffs and shackles—Defense Appellate Exhibit A (not briefed but raised in oral argument); and (4) failure to investigate and present an alibi defense to the larceny from the mess hall—Def.App. Ex. A (not briefed but raised in oral argument).

■ 19. Concerning specific intent, the record reflects that, while in pretrial confinement, appellant had been evaluated and received treatment from a qualified psychiatrist, Lieutenant Commander (LCDR) Kayne Kishiyama, M.D. Colonel Lewis Kurke, M.D., a board-certified psychiatrist, also examined appellant by order of the court-martial. COL Kurke concluded that appellant was mentally competent and mentally responsible. COL Kurke testified as a defense witness prior to pleas. When the military judge asked COL Kurke whether a cocaine-dependent person would be capable of forming specific intent, COL Kurke responded, "Oh, absolutely, in my view." The military judge then inquired further as to whether there would "be anything that would preclude him from doing that?" COL Kurke responded, "I don't think so."

20. Defense counsel's duty to investigate a plausible line of defense must be "evaluate[d] ... from counsel's perspective at the time," after "eliminat[ing] the distorting effects of hindsight." *Strickland v. Washing-*

*ton,* 466 U.S. at 689, 104 S.Ct. at 2065. In this case, defense counsel had the benefit of LCDR Kishiyama's evaluation and had appellant examined by COL Kurke, a board-certified psychiatrist. COL Kurke's testimony strongly suggests that an attack on specific intent based on drug use was not plausible. We hold that counsel were not deficient in this respect.

■ 21. Likewise, we hold that defense counsel's failure to challenge appellant's competence to stand trial was not deficient. Not only was appellant found competent to stand trial by COL Kurke, appellant's participation in the trial refutes his claim of incompetence. Appellant engaged in a lengthy discussion with the military judge during the guilty plea inquiry. He challenged the accuracy of a stipulation of fact. He testified lucidly and at length during the sentencing hearing. He was responsive and articulate during cross-examination. We hold that appellant's claim of incompetence during trial is unsupported by the record.

■ 22. Appellant claims that his counsel were deficient for failing to take action after he was observed in restraints by court members. We accept his uncontradicted assertion that he informed his counsel that he had been seen in restraints by court members. Assuming *arguendo* that defense counsel knew about appellant's claim, there was no possibility of prejudice, for the reasons set out in our disposition of Issue II. ¶¶ 7–13. Accordingly, we hold that appellant is not entitled to relief on this claim.

■ 23. Finally, we turn to appellant's potential alibi defense. Appellant asserts that he told his counsel that he was with a friend until 11:30 p.m. on the night that someone broke into the mess hall. At about 11:30 p.m. the friend gave appellant a ride to his wife's apartment. Appellant then picked up his car and drove to Fitchburg, Massachusetts, to buy drugs.

24. The lead cook at the mess hall testified that he secured the money in a safe, locked the doors to the mess hall, and departed at 6:15 p.m. on January 7, 1992. He was notified of the break-in at about 12:30 a.m. on January 8.

25. We hold that defense counsel were not deficient as to this claim. Whether defense counsel investigated appellant's claimed alibi cannot be determined from the record. Even if they did not, however, such failure would not have been unreasonable. The evidence would not provide an alibi because it left a one-hour period unexplained. Furthermore, it showed that appellant had an opportunity and motive to steal the money. Finally, an alibi defense was inconsistent with appellant's oral and written admissions of guilt. Under these circumstances, forgoing an alibi defense was not unreasonable.

### Decision

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, CRAWFORD, and WISS concur.